UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

FRANK BRUNKER,                    )
                                  )
            Plaintiff             )
                                  )
        v.                        )   Case No. 2:04 cv 478
                                  )
SCHWAN'S HOME SERVICE, INC.,      )
                                  )
            Defendant             )


OPINION AND ORDER

This matter is before the court on the Motion to Exclude Or Limit The Testimony Of Defendant's Expert Witness, Dr. Bruce L. Jaffee, filed by the plaintiff, Frank Brunker, on August 30, 2006. For the reasons set forth below, this motion is **GRANTED**.

Background

Frank Brunker was a route manager for Schwan's Home Service. In October 2004, he filed a claim against his former employer alleging that he was terminated in retaliation for exercising rights provided by the Americans With Disabilities Act. Over the course of discovery, Brunker disclosed economist James Bernard as an expert witness who prepared a report regarding Brunker's lost wages and benefits.  Schwan's named Dr. Bruce L. Jaffee, another economist, to rebut these calculations.

Jaffee's rebuttal report consisted of a one and a half page letter in which Jaffee described three concerns that he had with Bernard's conclusions. After reviewing Bernard's report and Brunker's deposition testimony, Jaffee criticized Bernard for assuming, "without any rationale," that Brunker's unemployment

would continue for 30.5 years. According to Jaffee, "Mr. Brunker's employment record shows that he has had multiple employers, and he has been able to move from one position to another after being dismissed from a job." (Jaffee Letter p. 1) Jaffee also pointed out that Bernard's conclusions assumed that Brunker would have remained employed by Schwan's for 30.5 years, despite data that showed Schwan's "experiences considerable turnover among its commissioned sales force." (Jaffee Letter p. 2) Finally, Jaffee took issue with Bernard's calculation of loss based upon the estimation that Brunker's best employment prospect was as a pizza delivery person earning $12,480 per year. Jaffee stated that the mean earnings of a high school graduate in the United States was $42,221 in 2004. Jaffee concluded, stating, "I see no reason why Mr. Brunker could not attain these levels." (Jaffee Letter p. 2)

Brunker seeks to exclude Jaffee's testimony. The testimony he has given, according to Brunker, is that of a vocational rehabilitation specialist even though this is not his field of expertise. According to Brunker, Jaffee's opinions also fail to account for Brunker's multiple sclerosis. Schwan's counters that Jaffee's testimony concerns "earnings impairments," a subject on which Jaffee previously has testified as an expert, and that any failure to assess specific variables such as Brunker's multiple sclerosis, influences only the weight to be given evidence by the factfinder and not the admissibility of the evidence.

### Discussion

The Federal Rules of Evidence relax the usual first-hand

knowledge requirement for an expert opinion that "has a reliable basis in knowledge and experience." *Cummins v. Lyle Industries*, 93 F.3d 362, 369 (7th Cir. 1996).  In *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 589, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993), the Supreme Court held that "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." The Supreme Court further held that the district court's "basic gatekeeping obligation" applies to all expert testimony, not just "scientific" testimony. *Kumho Tire Company Ltd. v. Charmichael* 526 U.S. 137, 147, 119 S.Ct. 1167, 1174, 143 L.Ed.2d. 238 (1999). *See Huey v. United Parcel Service, Inc*., 165 F.3d 1084, 1086 (7th Cir. 1999). The 2000 Amendment to Federal Rule of Evidence 702 synthesized the Supreme Court's holdings in *Daubert* and *Kumho* with the text of Rule 702. *See* Advisory Committee Notes to the 2000 Amendment. ("The amendment affirms the trial court's role as gatekeeper and provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony.").

The amended rule states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the

case.

Federal Rule of Evidence 702

The requirements of Rule 702 are met under a two-step inquiry that first asks "whether the reasoning or methodology underlying the testimony is scientifically valid." *Chapman v. Maytag Corporation*, 297 F.3d 682, 687 (7th Cir. 2002). This initial inquiry assures reliability through the insistence that expert testimony is "grounded in the methods and procedures of science." *Cummins*, 93 F.3d at 378.; *Chapman*, 297 F.3d at 687 ("The focus of the district court's *Daubert* inquiry must be solely on principles and methodology, not on the conclusions they generate.") Four non-exclusive factors were described by the Supreme Court in *Daubert* and guide this consideration:

> (1) whether the theory can be and has been verified by the scientific method through testing; (2) whether the theory has been subjected to peer review; (3) the known or potential rate of error; and (4) the general acceptance of the theory in the scientific community.
>
> *Chapman*, 297 F.3d at 687 (*citing* **United States v. Vitek Supply Corp**., 144 F.3d 476, 485 (7th Cir.1998)

The district court's second inquiry determines "whether the evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue." *Porter v. Whitehall Laboratories, Inc*., 9 F.3d 607, 616 (7th Cir. 1993). "An expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formu-late that opinion; the opinion must be an expert opinion (that

4

is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert." ***Ancho v. Pentek Corp.*** 157 F.3d 512, 518 (7th Cir.1998) (*quoting **United States v. Benson***, 941 F.2d 598, 604 (7th Cir. 1991). This standard equally is applied to "scientific" testimony and expert opinions based upon "social sciences." ***Zenith Electronics Corp. V. WH-TV Broadcasting Corp.***, 395 F.3d 416, 419 (7th Cir. 2005). Provided the district court adheres to the requirements of ***Daubert***, its decision will be upheld unless manifestly erroneous. ***Naeem v. McKesson Drug Company***, 444 F.3d 593, 608 (7th Cir. 2006).

The testimony offered by Jaffee is not admissible under either of these inquiries. The parties' arguments regarding whether Jaffee is sufficiently credentialed to provide expert testimony about Brunker's damages is misplaced. Whether Jaffee, a highly published Indiana University professor whose expertise appears to be economic and regulatory issues, is qualified to assist a jury regarding Brunker's damages, is secondary to the fact that, in this case, he offers nothing more than conclusions unsupported by principles or methodology.

In a report that Jaffee himself characterized as a "preliminary evaluation," he stated that because Brunker has had multiple employers in the past, he is capable of being employed in the future. He concluded that because Schwan's experiences high employee turnover rates, Brunker cannot assert that he would have remained employed by Schwan's beyond the two year average.

5

Finally, Jaffee concluded that there is no reason Brunker cannot earn a salary commensurate with the national mean earnings of all high school graduates.

If there is a scientific basis underlying Jaffee's conclusions, he has not shown it. At most, Jaffee's admittedly preliminary conclusions are straightforward comparisons of Brunker to broad categories of the population. He does not explain why it is acceptable to disregard Brunker's medical condition, education level, work experience, or the economics and employment statistics of the regional job market. Jaffee's testimony provides no basis on which the district court can determine whether it meets the requirement of Rule 702 that expert testimony be the product of the application of "reliable principles and methods" to specific facts of this case. *See **Zenith Electronics Corp.***, 395 F.3d at 419("Shapiro may be the world's leading student of MMDS services, but if he could not or would not explain how his conclusions met the Rule's requirements, he was not entitled to give expert testimony."). Because Jaffee has not indicated what, if any, principles or methodology support his conclusions, the court can only assume their absence.

Schwan's argument that any shortcomings in Jaffee's testimony influence only the weight and not the admissibility of the testimony misunderstands the district court's role as gatekeeper under **Daubert** and Rule 702. *See **Huey***, 165 F.3d at 1087 ("[I]t assumes that anyone with 'expertise' may testify as an expert. That just is not so."). Jaffee's conclusory remarks, in addition

6

to indicating no basis in scientific methodology, do not meet *Daubert's* relevancy requirement. The rudimentary comparisons of Brunker's earnings, for instance, to a broad national average for high school graduates, is not the "specialized knowledge" that Rule 702 contemplates as giving assistance to the trier of fact to understand the evidence.

Schwan's supports its argument that Jaffee's shortcomings affect only the weight of testimony with reference to *Cummings v. Standard Register Co.*, 265 F.3d 56 (1st Cir. 2001). However, the testimony in that case was based upon the expert's calculation of future losses, taking into account the plaintiff's base salary, Bureau of Labor Statistics estimates of annual increases for salaried workers, the plaintiff's retirement age, the value of future fringe benefits, and offsetting the positive benefits of the plaintiff's current employment. *Cummings*, 265 F.3d at 61. In comparison, Jaffee's report offers only a conclusion with no comparable calculation or methodology. The expert testimony in *Cummings* was deemed to be admissible, but with less value based upon the expert's failure to include in his calculation addi-tional, more specific variables. Jaffee, on the other hand, has considered no variable particular to Brunker's claim.  Jaffee has done little more than recite statistics without application. For these reasons, unlike *Cummings*, his testimony is inadmissible. *See e.g.* *Naeem*, 444 F.3d at 608 (concluding that "general observations" about "normal or usual business practice" failed to meet *Daubert's* "requisite level of reliability.").

Finally, Schwan's has argued that Jaffee followed the same methodology used by Bernard to formulate his opinion.  Because no challenge has been raised to Bernard's proposed testimony, any comparison is irrelevant.

_____

For the foregoing reasons,  the Motion to Exclude Or Limit The Testimony Of Defendant's Expert Witness, Dr. Bruce L. Jaffee, filed by the plaintiff, Frank Brunker, on August 30, 2006, is **GRANTED**.

ENTERED this 23rd day of October, 2006

s/ ANDREW P. RODOVICH
United States Magistrate Judge