UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| **FRANK BRUNKER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:04 CV 478 |
| | ) | |
| **SCHWAN'S FOOD SERVICE, INC., and** | ) | |
| **SCHWAN'S HOME SERVICE, INC.,** | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION and ORDER**

Plaintiff, Frank Brunker (hereinafter "Brunker") brought this action claiming that defendants, Schwan's Food Service, Inc., and Schwan's Home Service Inc., (collectively "defendants" or "Schwan's") discriminated against him in violation of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101, et seq. (1994). Presently before the court is defendants' motion for summary judgment (Defs.' Mot., docket # 79; Defs.' Memo., docket # 80) and Brunker's response thereto (Pl.'s Resp., docket # 106), and defendants' reply in support of summary judgment (Defs.' Reply, docket # 109). For the following reasons, defendants' motion is **GRANTED.**

**I.  BACKGROUND**

In November 2002, Brunker began work for Schwan's as a "route manager." In this capacity he drove a commercial vehicle and sold and delivered frozen food to customers. In February 2003, Brunker began suffering from symptoms of what was later

diagnosed as Multiple Sclerosis (MS). On February 18, 2003 Brunker presented a note from his physician to Schwan's, advising that Brunker was to avoid driving because of his recurring dizziness. Brunker spent some time off of work, but eventually returned on April 1, 2003, after his physician released him to work with restriction to light duty and no driving. On May 1, 2003, with his physician's approval, Brunker returned to work without any restriction. Brunker continued to work for Schwan's until he was terminated in September 2003. Brunker filed this lawsuit claiming harassment, retaliation, failure to accommodate and disparate treatment in violation of the ADA. Schwan's moves for summary judgment on all claims. Brunker concedes that summary judgment is proper on his harassment and retaliation claims. The court addresses Brunker's remaining claims below.

## II.  STANDARD OF REVIEW

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). *See also United Ass'n of Black Landscapers v. Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990), *cert. denied*, 499 U.S. 923, 111 S. Ct. 1317, 113 L. Ed. 2d 250 (1991). FEDERAL RULE OF CIVIL PROCEDURE 56(a) provides that "[a] party seeking to recover upon a claim....may....move with or without supporting affidavits for a summary judgment in the party's favor

upon all or any part thereof." FED. R. CIV. P. 56(a).

Motions for summary judgment are governed by FEDERAL RULE OF CIVIL PROCEDURE 56(c), which states:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A genuine issue of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997). It is well settled that summary judgment under RULE 56 should be granted "only where it is perfectly clear that there is no dispute about either the facts of the controversy or the inferences to be drawn from such facts." *Cent. Nat'l Life Ins. Co. v. Fid. & Deposit Co. of Md.*, 626 F.2d 537, 539-540 (7th Cir. 1980) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## II.  ANALYSIS

The ADA prohibits employers from discriminating "against a qualified

individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA covers two types of discrimination claims: (1) disparate treatment - claims that a qualified employee with a disability was treated differently from a non-disabled employee because of his disability; and (2) failure to accommodate - claims that the employer did not make reasonable accommodations for a disabled, but otherwise qualified employee. 42 U.S.C. § 12112(b); *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1032 (7th Cir. 1999); *Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1021-22 (7th Cir. 1997). Brunker alleges both a disparate treatment claim and a failure to accommodate claim. In either case, Brunker bears the burden of establishing he was "a qualified individual with a disability" under the ADA. 42 U.S.C. § 12112(a); *Contreras v. Suncast Corp.*, 237 F.3d 756, 762 (7th Cir. 2001). Defendants argue that Brunker has not met this initial burden because he has not demonstrated that he is disabled under the ADA. (Defs.' Memo. at 10-15.) The court agrees.

An individual is disabled within the meaning of the ADA if he: (1) has a physical or mental impairment that substantially limits one or more of his major life activities; (2) has a record of such impairment; or (3) is regarded by his employer as having such an impairment. 42 U.S.C. § 12102(2). Brunker has invoked alternatives (1) and (3) in his effort to demonstrate that he is disabled. (Pl.'s Resp., docket # 106, at 21-23.) The parties do not dispute that Brunker has MS, but rather dispute whether Brunker's MS has

4

imposed a substantial limitation on any major life activity for purposes of alternative (1), and whether defendants regarded Brunker's MS as disabling for purposes of alternative (3).

### A.  Brunker was not Substantially Limited in a Major Life Activity

The Supreme Court defines "major life activities" as those activities that "are of central importance to daily life," such as "walking, seeing, and hearing." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002); *Cassimy v. Bd. of Educ.*, 461 F.3d 932, 936 (7th Cir. 2006). "Not every medical affliction amounts to, or gives rise to, a substantial limitation on a major life activity." *Id*. To be substantially limited in a major life activity is to be unable to perform that activity or "significantly restricted as to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 937 (7th Cir. 2007) (citing 29 C.F.R. § 1630.2(j)(1)(ipp)-(ii)); *Burks v. Wis. DOT*, 464 F.3d 744, 755-756 (7th Cir. 2006) (citing *Toyota*, 534 U.S. at 184). Thus, it is not enough that an impairment *affect* a major life activity; the impairment must *substantially limit* a major life activity. *Knapp v. Northwestern Univ*. 101 F.3d 473, 483 (7th Cir. 1996).

On summary judgment, an ADA plaintiff bears a high burden. He "must provide specific facts establishing that there is a genuine issue of material fact as to whether he is substantially limited in a major life activity . . . . conclusory allegations will not do." *Scheerer v. Potter*, 443 F.3d 916, 919 (7th Cir. 2006). The court considers "the nature and severity of the impairment, the duration and expected duration of the impairment, and

5

the permanent or long term impact or the expected permanent or long term impact of or resulting from the impairment." *Kampmier*, 472 F.3d at 937 (quoting C.F.R. § 1630.2(j)(2)(i)-(iii)). Whether an individual is substantially limited in a major life activity is to be determined at the time the relevant employment decision was made.[1] *See Bay v. Cassens Transport Co.*, 212 F.3d 969, 974 (7th Cir. 2000). Brunker offers ten potential major life activities: 1) driving, 2) working, 3) walking, 4) seeing, 5) talking, 6) urinating, 7) bathing, 8) combing hair, 9) writing, and 10) cooking. (Pl.'s Resp. at 21.) The court

---

[1] Brunker claims that he was denied reasonable accommodations beginning on February 18, 2003, when he presented a physician's note to defendants, and until September 22, 2003, when he was terminated. (Pl.'s Resp. at 24.) Defendants have argued that pursuant to 42 U.S.C § 12117(a), "[t]o the extent that Brunker relies on any alleged violations that occurred more than 300 days before March 15, 2004, that is May 21, 2003, to support his claims, he is time-barred from so-doing." (Defs.' Memo. at 10.) Brunker does not dispute that events prior to May 21, 2003 fall outside of the 300 day requirement, but contends that the court should consider these events under the continuing violation doctrine. "The continuing violation doctrine allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period. For purposes of the limitations period, courts treat such a combination as one continuous act that ends within the limitations period." *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 445-46 (7th Cir. 1994) (quoting *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992)) (internal quotations omitted). Assuming without deciding that Brunker may rely on events that occurred before May 2003, as explained later in this order, Brunker has anyway failed to demonstrate that he was disabled under the ADA, and his ADA claims must therefore be dismissed. It should be noted that even if Brunker's claims were limited to events beginning on May 21, 2003, evidence of his limitations prior to May 21, 2003 could otherwise serve as an aid in the determination of Brunker's limitations during the relevant time period. *See EEOC v. Sears, Roebuck & Co.* 233 F.3d 432, 438-39 (7th Cir. 2000) (explaining that although plaintiff's impairment subsequent to her resignation from Sears "does not factor directly into the analysis of whether [she] was disabled when she was employed by Sears," her present inability to walk more than one city block did support her claim that her neuropathy may have been substantially limiting at the time at issue.) Thus, for the purposes of this order and for determining whether Brunker was disabled under the ADA, the court has considered evidence of Brunker's disability beginning in February 2003.

6

addresses each activity in turn.

### 1. Driving

The list of life activities in the regulations defining "major life activity" does not include driving; however, the list is not exhaustive. 29 C.F.R. § 1630.2(h)(2)(i). Nevertheless, driving is markedly different from those activities described in the regulations, and it is odd to suggest that driving, an activity regulated by the state through licensing procedures, is on par with activities such as seeing, hearing and walking. *Chenoweth v. Hillsborough County*, 250 F.3d 1328, (11th Cir. 2001). Moreover, although the Seventh Circuit has not yet addressed the issue, *see Sinkler v. Midwest Prop. Mgmt. Ltd. P'ship.*, 209 F.3d 678, 685 (7th Cir. 2000), a majority of courts who have considered whether driving is a major life activity, have held that it is not. *See Felix v. N.Y. City Transit Auth.*, 324 F.3d 102, 106 (2nd Cir. 2003); *Colwell v. Suffolk County Police Department*, 158 F.3d 635, 643 (2nd Cir. 1998); *Yindee v. Commerce Clearing House, Inc.*, 2005 U.S. Dist. LEXIS 12769 (N.D. Ill. June 16, 2005); *Green v. Pace Suburban Bus*, 2004 U.S. Dist. LEXIS 12956 (N.D. Ill. July 12, 2004); *Reberg v. Rd. Equip.*, 2005 U.S. Dist. LEXIS 31699 (N.D. Ind. 2005). Given the language in the regulations, and the weight of authority, the court agrees with courts that have found that driving is not a major life activity. Accordingly, Brunker may not rely on "driving" in claiming that he was substantially limited in a major life activity.

### 2. Working

Although the Supreme Court has declined to explicitly hold that working is a

major life activity, *see Toyota*, 534 U.S. at 200; *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999), the Seventh Circuit has held that it is. *Peters v. Mauston*, 311 F.3d 835, 843 (7th Cir. 2002) ("To be sure, working constitutes a major life activity under the ADA."). To the extent that Brunker wishes to assert that he is substantially limited in the major life activity of working, he must demonstrate that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Burnett v. LFW Inc.*, 472 F.3d 471, 483-84 (7th Cir. 2006); *Cassimy*, 461 F.3d at 936. To be clear, "the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Burnett*, 472 F.3d at 483-84. (quoting 29 C.F.R. § 1630.2(j)(3)(i)) (internal quotation marks omitted).

In support of the argument that his MS symptoms "substantially affect [his] daily life activit[y] of working," Brunker directs the court only to his testimony that he had difficulty interacting with customers when his speech slurred, and that at some point he took a temporary leave of absence. (Pl.'s Resp. at 11, 21.) With respect to slurred speech, it is unclear how this condition precluded Brunker from working at his own job - indeed by his own accounts, he continued to do his job well for several months after the onset of his MS symptoms - let alone, at a broad range or class of jobs. The fact that Brunker was temporarily on leave from his work with Schwan's, likewise speaks nothing of his ability to work at a broad range of jobs or a class of jobs. Without evidence that he was unable to work in a broad range or class of jobs, Brunker has not

met his burden of establishing that he was substantially limited in the activity of working. *See Burnett*, 472 F.3d at 484. Brunker may not, therefore, rely on "working" to claim that he was substantially limited in a major life activity.

### 3. Walking

Brunker does not contend that he was unable to walk. Rather, he testified that when he was dizzy, he walked like "a drunk guy," and when his right leg dragged, it was "difficult" for him to walk "at times." (Brunker's Dep. at 220-21, 227). The record lacks evidence that Brunker's MS limited his ability to walk more than intermittently, or for more than short periods of time. Unfortunately for Brunker, "intermittent, episodic impairments . . . are not disabilities." *Ogborn v. Ufcw, Local No. 881*, 305 F.3d 763, 767 (7th Cir. 2002). Having completely failed to demonstrate that he was significantly restricted as to the condition, manner, or duration under which he could walk as compared to the average person, Brunker has not established that he was substantially limited in the major life activity of walking. *See Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 951 (7th Cir. 2000) (noting that where plaintiff could walk distances of less than a mile consistently, and his arthritis affected his "rate and pace" of activities, plaintiff's limitations did not constitute significant restrictions on his ability to walk as compared with the average person) (citing *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1025 (5th Cir. 1999) (finding that "walk[ing] with a limp [and] mov[ing] at a significantly slower pace than the average person" and having difficulty in extreme cold do not pose a substantial limitation on ability to walk under the ADA); *Kelly v. Drexel Univ.*, 94 F.3d

9

102, 106 (3rd Cir. 1996) (affirming district court's holding that where plaintiff could not walk "more than a mile or so" and "certainly couldn't job" and had to "pace [himself] slower" when climbing stairs, he was not substantially limited in his ability to walk)); *Puoci v. Chicago*, 81 F. Supp. 2d 893, 896-97 (N.D. Ill. 2000) (finding plaintiff who walked with a limp, had pain and discomfort when walking on soft surfaces, suffered from numbness in his right leg and thigh, and could only walk for 1 ½ miles without pain was not disabled under the ADA). Brunker may not, therefore, rely on "walking" in making a claim that he was substantially limited in a major life activity.

### 4. Seeing

As to his ability to see, Brunker argues that he "began suffering extreme headaches twice a week shortly after starting employment at Schwans," and that these headaches "sometimes prevented [him] from opening his eyes and impaired his vision." (Pl.'s Resp. at 21.) Brunker directs the court's attention only to his own testimony that sometimes the headaches "hurt so bad" that he "couldn't even get out of bed and open [his] eyes." (Pl.'s Resp. at 10) (citing Brunker's Dep. at 228.) This testimony is general and does not provide specific facts demonstrating that Brunker was significantly restricted in the condition, manner, or duration of his ability to see, as compared to the average person.[2] Without such facts, Brunker cannot rely on "seeing"

---

[2]Defendants cite Dr. Bruce Krueger's September 2003 opinion that plaintiff suffered "only a mild reduction in color vision in one eye and mild steadiness" neither of which "constitute[s] a significant impairment or create a significant limitation," but that plaintiff should not "be working in balance challenged situations." (Defs.' Memo. at 12.) However, neither defendants nor Brunker have submitted Dr. Krueger's report

10

in claiming he was substantially limited in a major life activity.

### 5. Talking

Brunker testified that in February 2003 his speech "would just become slurred" two to three times a day, and when it did "people usually didn't understand what [he] was trying to say" and he had to repeat himself. (Brunker's Dep. at 222-24.) This hardly demonstrates that Brunker was unable to, or severely restricted in speaking. Rather, he suffered brief interruptions in his ability to articulate. Such "intermittent" impairments do not amount to disability for ADA purposes. *Ogborn*, 305 F.3d at 767 ("intermittent, episodic impairments . . . are not disabilities . . ."). Accordingly, Brunker may not rely on "talking" in claiming that he was substantially limited in a major life activity.

### 6. Urinating

Brunker testified that when he is dizzy it is difficult to "stand still" and therefore to "urinate standing." (Brunker's Dep., docket # 107-3 at 221.) The fact that Brunker could not stand (and presumably had to sit) to urinate *when* he was dizzy, hardly indicates that he was substantially limited in his ability to urinate. Moreover, the evidence is that Brunker was only temporarily or intermittently dizzy. Without specific facts indicating that Brunker was unable to urinate, or was significantly restricted in the

---

as an exhibit for the court's review. Nonetheless, a "mild reduction" in vision hardly amounts to a significant impairment in one's sight. *See Sutton*, 427 U.S. at 488-89 (noting that severe myopia did not create a substantial limitation on any major life activity for plaintiff); *Dyke v. O'Neal Steel*, 327 F.3d 628, 632 (7th Cir. 2003) (holding that individual with only one eye was not substantially limited because only limitation on his ability to see was that he could not drive at night or hold his head straight when looking left to right).

condition, manner, and duration under which the average person could urinate, Brunker has failed to make his burden on summary judgment to show that he was substantially limited in the major life activity of urinating. *Kampmier*, 472 F.3d at 937; *Scheerer*, 443 F.3d at 919. As such, Brunker may not rely on "urinating" in claiming he was substantially limited in a major life activity.

### 7. Bathing, Combing Hair, Writing, Cooking

Brunker testified that he suffered from a shaky hand once or twice a day in February 2003, and about once or twice a week at the time of his deposition. (Brunker's Dep., docket # 107-3, at 225). At these times, Brunker could not write, comb his hair, bathe, or cook with that hand. (Brunker's Dep., docket # 107-3, at 225). In addition, Brunker testified that in February 2003 he felt lightheaded "[j]ust about all the time," and at the time of the deposition he felt lightheaded "[p]robably about two or three times a week." When lightheaded, Brunker was unable to cook. (Brunker's Dep., docket # 107-3, at 222.) Assuming without deciding that writing, combing hair, bathing, and cooking are all major life activities,[3] based on the record before the court, Brunker has not set demonstrated that he was substantially limited in these major life activities. First, it should be noted, that Brunker testified that he could not perform these activities with his shaky hand, not that he could not perform these activities at all. Second, there

---

[3]There is substantial authority that caring for one's self is a major life activity. 49 C.F.R. § 27.5(c)(2)(b) ("Major life activities means functions such as caring for one's self . . ."). Courts have also treated writing as a major life activity. *See Gonzales v. National Bd. of Med. Examiners*, 225 F.3d 620, 626 (6th Cir. 2000).

are no specific facts demonstrating how Brunker was significantly restricted in the condition, manner, or duration under which he could perform any of these activities as compared to the average person. At best, the evidence supports a conclusion that Brunker was intermittently or temporarily impaired in his ability to perform these activities. As noted, such impairment does not amount to disability. *Ogborn*, 305 F.3d at 767. Brunker may not, therefore, rely on bathing, combing hair, writing, or cooking in claiming that he was substantially limited in a major life activity.

Having failed to demonstrate that he was substantially limited in any of the major life activities that he has set forth, Brunker may not rely on alternative (1) of 42 U.S.C. § 12102(2) in claiming that he is disabled within the meaning of the ADA.

### B.  Regarded as Disabled Under the ADA.

As explained above, a plaintiff may demonstrate that he is disabled under the ADA by showing that he was regarded as having an impairment. 42 U.S.C. § 12102(2). Brunker claims that he qualifies as disabled under this alternative. In order to make a "regarded as" claim, Brunker must prove either: (1) Schwan's mistakenly believed him to have an impairment that substantially limited a major life activity; or (2) Schwan's mistakenly believed an actual non-limiting impairment substantially limited a major life activity. *Sutton*, 527 U.S. at 471; *Nese v. Julian Nordic Constr. Co.*, 405 F.3d 638, 641 (7th Cir. 2005). It is not enough for Brunker to show that Schwan's knew of his MS; rather, he must demonstrate that Schwan's believed that one or more of his major life activities

13

were limited by the MS. *Amadio v. Ford Motor Co.*, 238 F.3d 919, 925 (7th Cir. 2001). Brunker must identify which major life activities he asserts that Schwan's regarded as being substantially limited. *Id.*

Brunker asserts that defendants regarded him as substantially limited in performing manual tasks. Brunker argues that this is evident because: (1) witness testimony shows that Schwan's knew that Brunker had MS, (2) "[a]t times, Schwans had another driver drive for Brunker," (3) "Brunker notified Ramey he was going to the Mayo Clinic for a second opinion concerning his MS," (4) "[s]everal Route Managers attested that management at Schwans treated Brunker poorly because of Brunker's MS," (5) Brunker's supervisor Ramey "felt if Brunker could not perform, Ramey did not want him around," (6) Brunker was terminated on the day he returned from the Mayo Clinic, (7) the stated reason for termination was that Brunker was "unable to perform essential job functions" and "Ties testified that Schwans put that reason on the termination form when an employee could not do something contained in their job description, such as driving." (Pl.'s Resp. at 23.) As noted above, it is of no consequence that Schwan's was aware that Brunker suffered from MS. Moreover, none of these "facts" speaks to defendants' beliefs as to limitations on Brunker's abilities to perform any specific major life activity. Without evidence indicating that Schwan's believed Brunker was substantially limited in a major life activity, Brunker cannot prevail on a claim under the ADA "regarded as disabled" standard. *Amadio*, 238 F.3d at 925.

Based on the evidence before it, this court concludes that no trier of fact could

14

reasonably find that Brunker was disabled under the ADA. Brunker has not established that he was disabled within the meaning of the ADA, and is therefore not entitled to recover under the ADA. *See Amadio*, 238 F.3d at 930. Accordingly, defendants are entitled to summary judgment on Brunker's disparate treatment and failure to accommodate claims.

### III.  MOTIONS TO STRIKE

Brunker has filed two motions to strike. The first seeks to strike portions of defendants' brief and designation of evidence in support of its motion for summary judgment (docket # 92), and the second seeks to strike portions of defendants' reply brief in support of defendants' motion for summary judgment (docket # 112). The evidence that Brunker seeks to strike was not offered by defendants in support of their claim that Brunker was not disabled under the ADA. Rather, it was offered to support alternative grounds for summary judgment. The court has disposed of Brunker's claims on the ground that he was not disabled under the ADA, and as such need not reach the asserted alternative grounds. Accordingly, whether defendants can offer the evidence in support of the alternative grounds is now a moot issue, and Brunker's motions to strike are therefore moot.

### IV.  CONCLUSION

For the foregoing reasons, it is **ORDERED** that defendants' motion for summary

15

judgment (docket # 79) is **GRANTED**. It is **FURTHER ORDERED** that plaintiff's motions to strike (docket ## 92, 112) are **DENIED as MOOT**.

The Clerk is directed to **ENTER FINAL JUDGMENT** stating: Judgment is entered **in favor of defendants** Schwan's Food Service, Inc., and Schwan's Home Service, Inc., **and against plaintiff** Frank Brunker, who shall take nothing by way of his complaint.

                                         **SO ORDERED**.

**ENTER:** August 16, 2007

                                      s/James T. Moody
                                      JUDGE JAMES T. MOODY
                                      UNITED STATES DISTRICT COURT